## CALDWELL ET AL. *vs.* ATCHAFALAYA BANK.

APPEAL FROM THE COURT OF THE FIRST JUDICIAL DISTRICT, JUDGE
BUCHANAN PRESIDING.

Where bank stock is pledged to secure a debt to the bank, and is after-
wards transferred in payment at its full value, although made on the
eve of insolvency, it does not prejudice other creditors, and is not frau-
dulent as to their rights.

The revocatory action to set aside a contract by an insolvent debtor, to a
creditor, to secure a just debt, is only applicable to a particular class
of cases, in which the only ground of nullity is an *undue preference* given
to one of the creditors, and suit must be brought within a year from the
date of such contract.

But the revocatory action may be brought within a year, by a single credi-
tor, from the date of his judgment, against his debtor, or by a syndic
representing *all the* creditors within a year from his appointment, to set
aside *all contracts* of the insolvent debtor, *by which creditors are injured.*

This is a revocatory action. The plaintiff alleges that, on the 6th January, 1838, he obtained judgment against one Samuel Chapman, on his two promissory notes, for the sum of ten thousand eight hundred and seventeen dollars, with legal interest. That on the 13th July, 1838, execution was levied on one thousand shares of bank stock, belonging to said Chapman, in the Atchafalaya Rail Road and Banking Company, which the bank claimed in virtue of a transfer to the company, by Chapman, the 23d of August, 1837.

EASTERN DIST.
*January*, 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

The plaintiff further shows, that, at the time of this transfer, he was a creditor of Chapman for the amount of the notes, on which he subsequently obtained judgment; that the stock thus transferred was worth thirty thousand dollars, and the transfer to the bank was made in fraud of his rights as a creditor, giving them an unjust preference over him, as Chapman was then in insolvent circumstances, which fact was well known to the bank at the time of said transfer.

The plaintiff finally shows that he has been unable to collect the amount of his judgment, in consequence of the illegal and fraudulent transfer of the said stock to the bank, wherefore he prays that it be annulled ; and that the said one thousand shares of stock be surrendered up to satisfy his judgment against Chapman, or in default thereof, that the defendants be condemned to pay the amount.

In a supplemental petition the plaintiff alleges that one thousand one hundred and eighty-five shares of stock, instead of one thousand, was transferred by the said Samuel Chapman, to the defendants, to secure and give them an unjust preference over other creditors, which stock was sold at a great loss and depreciated value. He also alleges that Chapman sold and transferred five hundred and twenty shares of the capital stock of the Exchange and Banking Company, at the same time, to the defendants, all of which is alleged to be in fraud of creditors. He prays judgment that said sales be annulled, &c.

The defendants pleaded a general denial to all the material allegations in both petitions, and averred that Chapman was indebted to them in the sum of sixty-two thousand six

Eastern Dist.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

hundred and eighty dollars, and that at the time of contracting part of said debt, and while perfectly solvent, he pledged the stock mentioned in the petition to secure part of the same according to law; and that he subsequently transferred said stock in payment of the debt for which it was pledged, and at a fair price; that they are *bona fide* holders and owners of said stock for a valuable consideration, without prejudice to the rights of any other creditor of Chapman. They further plead the prescription of one year.

The original petition was filed the 15th August, 1838. On the 4th March, 1839, the syndic of the creditors of Samuel Chapman filed his petition of intervention, alleging that said transfers of stock were fraudulent and illegal, and gave an unjust preference to the defendants over the other creditors; and prayed that said sales and transfers be annulled; that the stocks thus transferred be declared to belong to the mass of creditors. The defendants, in answer, aver that Chapman had borrowed money on said stocks at a time when he was perfectly solvent, and possessed of much property; but afterwards, to prevent sacrifice, sold and transferred said stocks to them at a price greater than the highest market price.

Under these pleadings and issues, the cause was tried before the court and a jury.

The evidence showed that, on the 31st January, 1837, Samuel Chapman, by private act, executed before the cashier, pledged one thousand shares of the capital stock of the Atchafalaya Bank, to said bank, on which thirty dollars per share was paid, as collateral security, and to secure the payment of his three promissory notes, discounted in bank, amounting to twenty-eight thousand four hundred dollars.

On the 22d August, 1837, said Chapman, for value received, transferred all his right, title and interest in eleven hundred and eighty-five shares of the capital stock of the Atchafalaya Bank, to said bank, on which thirty dollars per share are stated to have been paid. This transfer is made by act under private signature.

On the 11th September, 1838, Chapman filed his petition

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

and schedule in court, and made a surrender to his creditors of all his property, and also prayed for the benefit of the insolvent law.

The evidence showed great embarrassment in Chapman's affairs, during the latter part of the year 1837. His notes were under protest, and he unable to meet his engagements. Upon the pleadings, and the evidence produced, the cause was submitted to the jury, under the following charge from the judge presiding, which was excepted to by the defendants' counsel:

"1. The question to be decided by the jury concerns the transfer of one thousand shares of stock, by Samuel Chapman, to the defendants, on the 23d August, 1837. The jury are to find, from the evidence before them, whether that transfer was made by Chapman, and accepted by the Atchafalaya Bank, with the intent of depriving the creditors of Chapman of their eventual rights, upon the property of Chapman.

"2. The claims or rights of the Atchafalaya Bank, under the pledges which it held previous to the transfer, are not at issue in this suit. The defendant has pleaded these pledges as showing that it gave a valid consideration for the transfer; but this plea does not alter the character of this action, which is a suit to annul the transfer, not to annul the pledges. It only modifies the relation of the parties, by alleging that, if any ground of nullity of the contract of transfer exist, it is not the want of a consideration.

"3. If the jury considers it proved that the transfer of stock made by Chapman to the bank was made for the purpose of securing a debt due by the former to the latter, and of giving to the latter a preference over the other creditors of the former, that such transfer gave an advantage to the bank over the other creditors of Chapman, and that, at the time of the transfer, the bank knew that Chapman was in insolvent circumstances, it will be the duty of the jury to give a verdict annulling said transfer.

"4. By being in insolvent circumstances, is meant that the amount of a person's property and credits are not equal, at a fair appraisement, to the debts due by the party. It

EASTERN DIST. is for the defendants to show that the amount of Chapman's
January, 1840. property and credits was equal to the amount of his debts,

CALDWELL ET AL. after the latter had been shown by the plaintiff.
*vs.*
ATCHAFALAYA      "5. The effect of annulling the transfer would be to
BANK.   restore the parties to the same situation in which they were
before the transfer was made. *Louisiana Code, art.* 1977.

"Therefore, in my opinion, the annulling the transfer
would revive the pledge. But this is not a subject for the
action of the jury in this verdict. It concerns the effect and
operation of that verdict, and the judgment to be rendered
upon it.

"6. The only prescription pleaded by defendants is the
prescription of one year.

"The provisions of the act of 1817, concerning oppositions
of creditors to the proceedings of their debtor, under that act,
on the ground of fraud, as presumed in alienations made
within three months previous to the failure, are foreign to
the present suit.

"7. The prescription of one year is to be counted in this
case, from the date of the transfer, if the jury should be of
opinion that the only object was to secure a just debt.

"8. The present suit being instituted previous to a cession
of property, by Chapman, was well instituted by a single
creditor."

The jury returned "a verdict for the plaintiff." After an
unsuccessful attempt to obtain a new trial, from judgment
confirming the verdict and annulling the sale and transfer of
the eleven hundred and eighty-five shares of stock, the
defendants appealed.

*Elmore* and *King,* for the plaintiff.

1. This action was brought by the plaintiff to annul the
transfer of a quantity of bank stock, made by Samuel Chap-
man, an insolvent, to the Atchafalaya Bank, upon the ground
that the transfer was a fraud upon the rights of the plaintiff,
a creditor of Chapman.

2. The evidence shows, conclusively, that the transfers
annulled by the judgment of the court below, gave the bank

EASTERN DIST.
*January,* 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

an unjust preference over the other creditors of Chapman, and that at the dates of the respective transfers, he was in insolvent circumstances, to the knowledge of the bank. Such a sale, so far as as it affects the rights of the plaintiff, is fraudulent, and should be annulled. *Louisiana Code,* 1965, 1978–79–80.

3. The verdict of the jury was in favor of the plaintiff. All questions of fraud are questions of fact. Upon questions of fact, the verdict of a jury is entitled to great weight, and will not be reversed by the Supreme Court, unless manifestly erroneous. *Benjamin & Slidell's Digest, page 33, letter O, section 2, for references.*

4. The intervenor has no right to interfere in this action. *Louisiana Code,* 1965. The syndic is clearly barred by prescription. See case of *Petit* vs. *His Creditors,* 3 *Louisiana Reports,* 26.

5. The evidence shows, conclusively, that the pledge, as well as the transfer, was fraudulent, unless it is saved by the plea of prescription. This leads us to an examination of the prescription pleaded. We contend that prescription does not cure the pledge; that it could not run in favor of the pledge after the transfer was made. The prescription pleaded, is that of twelve months, and is subject to the same rules, and liable to the same interruptions, which govern all prescriptions. If by the act of the defendants, they have destroyed the pledge by the transfer, they cannot set up prescription as to it. *Contra non valentem agere, non currit prescriptio.* See, also, the case of *Morgan* vs. *Robinson,* 12 *Martin,* 76. *Ayraud* vs. *Bubin's Heirs,* 7 *Martin, N. S.,* 481. 3 *Louisiana Reports,* 221. 7 *Idem.,* 581.

6. We insist, on the part of the plaintiff, that it was not within his power, at any time within twelve months, to have brought an action to annul the pledge. It existed not quite seven months before it was extinguished or cancelled by the transfer. It was impossible to bring an action to annul the pledge after the transfer was made, as by this act it was already annulled; therefore, the authorities cited above are applicable to this case.

EASTERN DIST.
*January*, 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

7. The only action that could have been brought, was to cancel the transfer, and our action was in time for this; being instituted within twelve months from its date.

*I. W. Smith* and *Cohen,* for the intervenor.

1. The law gives the right to the revocatory action to *one* creditor only, when there is no cession of property. After the cession, the right to this action is given to the syndic only., *Louisiana Code,* 1965. His right to represent all the creditors is inconsistent with the right of one of them to act in his own name, and separately from the syndic. The right of the syndic to represent *all* cannot be restrained to a *part* of the creditors. The verdict and judgment should have been in his favor.

2. The property in the stocks remained in Chapman until his cession. The acceptance of it by the judge, vested all his property in his creditors. *Act of* 1826, *section* 2. 2 *Moreau's Digest, page* 437. The syndic is their only representative. Caldwell never had a privilege ' on these stocks. Long previous to his seizure, Chapman had become bankrupt. *Code of Practice,* 722. And no privilege exists without a law creating it. *Louisiana Code,* 3152.

· 3. The intervenor and plaintiff concur in submitting to this court, for its final decision, the question whether the verdict and judgment appealed from should have been rendered in favor of the intervenor or the plaintiff. The bank cannot have the case remanded to settle this question. (1.) The bank has an interest in the change now prayed for by the syndic. The bank is a large creditor, and is entitled to share in the dividend arising from this fund. (2.) The judgment rendered in the District Court will be *res judicata* as to the intervenor. He was present at the trial, adduced evidence, and the verdict most effectually passed on his rights, by giving the stocks or money which he asked to the plaintiff. (3.) The evidence to support the verdict and judgment is amply sufficient, without the testimony of the witnesses objected to by the bank as creditors.

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

*Hoffman*, for the defendants. Before the suit of plaintiff was at issue with the defendant, Chapman, the common debtor, made a surrender, and obtained a stay of proceedings against his person and property ; consequently the plaintiff was stopped. The syndic *represented all the creditors*, which supersedes and suspends the plaintiff's action. This has been settled to be the law, when the syndic is appointed before suit is brought ; and the same reason applies, if afterwards, but before judgment. *3 Louisiana Reports*, 461.

2. The charge of the judge is erroneous. The defendants relied on their rights as pledgees, and pleaded the same. But the judge *a quo*, and the counsel opposed to us, seem to think the transfer must be illegal, if Chapman was insolvent at the time. They, however, did not so consider it in their petition, and the law does not so consider it. The transfer was made in the usual course of business, because the pledge of the stock was taken when the money was loaned ; and Chapman could not have sold it to a third party and paid the money over to the defendants. Then why not be permitted to sell it to them, when he obtained the highest price ?

3. If this were a *datien en paiement*, it is the same, because it is not made to the prejudice of other creditors. The debts were due, and the property pledged to pay them Chapman had lost all control over, until they were paid. If given in *payment at full price*, how could it be to the prejudice of creditors ? On the contrary, it was to their advantage. It is amply proved, and not contested, that the defendants took the stock at a much higher price, and above what others would have given.

4. But it is attempted to attack and set aside the pledge and transfer on technical and other grounds. The pleadings, however, present but one ground, that of nullity, because of the illegal preference given to the defendants, over other creditors. This plea cannot avail. The doors are closed against all inquiry after one year, from the date of the contract. All the contracts of pledge were made more than a year before bringing suit to avoid them. *Louisiana Code*,

EASTERN DIST.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.
1973, 1978, 1982, 3131. 3 *Louisiana Reports*, 26. 12 *Idem.*, 262. 1 *Martin, N. S.*, 417. 2 *Idem.*, 22.

5. If it be said that not the contract of pledge, but the transfer alone is attacked, we answer, that if it is not sued for, it is contested and litigated, and in fact the whole forms but one contract. It cannot be said that one is to the prejudice of creditors without looking to the other. The transfer was not to their prejudice, because it was made in pursuance of a previous pledge.

6. The jury were told they must not inquire into the questions raised as to the pledge; that if the transfer was illegal, then the pledge revived. If the validity and effect of the pledges could not be gone into; the only judgment that could have been given, was, that things be placed in the situation they were before the transfer. The jury were misled by the judge's charge, and the verdict must, therefore, be set aside.

7. We conclude with two positions, in each of which we feel confident of success :

1st. That if the consideration for the transfer was the full value of the stocks at the time, and the same had been under a pledge from a period more than a year previous to the bringing of this suit, further inquiry is closed by prescription.

2d. That if the pledges were valid at the time of the transfer, and gave to defendants all the rights of pledgees, that then a transfer of the stock to defendants, at its full value, was not an act or contract to the prejudice of the other creditors, and cannot be set aside.

*Grymes*, for the plaintiff, Caldwell, submitted the following argument in writing :

The material facts in this case, as to be found in the record, are :

1st. That Chapman pledged the stock to the bank on the 31st January, 1837.

2d. That this pledge was annulled on the 22d of August, 1837, and a complete sale and transfer of the stock made to the bank on that day.

3d. That Chapman was insolvent when the pledge was made, as well as at the time of the transfer.

4th. That they were both made to secure or pay a pre-existing debt, and consequently were fraudulent and void as against creditors.

5th. The plaintiff's action to annul the transfer was commenced on the 15th of August, 1838.

And the question arises:

1st. Whether the setting aside the sale or transfer of the stock for fraud, revives the pledge.

2d. If it does revive it, whether it does revive it, subject to the objection of the fraud which existed at the time it was annulled or merged in the transfer, or purged of the fraud by the prescription of one year, agreeably to the article 1982, of the Louisiana Code.

It is proposed only to trouble the court at this time with some observations on the second and last of these propositions.

I. And first, it is submitted whether prescription can be said to run in favor of a thing not in existence? It is clear from the testimony in the record that the pledge was annulled in August, 1837; that both parties, pledgor and pledgee, considered it so; and that between them it had no existence after that day. From this it would appear to result that no action would lie. It would have been a sufficient answer to such a suit to have shown that no such thing was in existence, and that no party to it claimed any thing under it. The plaintiff in such a suit could have no means of proving that any such act ever existed, for although the law invests acts of pledge passed before the cashiers of banks with some of the attributes of public acts, yet it is a fact, that they remain in the custody of the bank, and their existence may never even be known or suspected until the expiration of a year, and thus the greatest frauds may be consummated without any knowledge on the part of those who are to be their victims, until they are sanctioned by prescription of a year. The article 1982, of the Louisiana Code, creates the prescription in general terms without giving any particular rule by which it is to be governed or applied. It is pre-

Eastern Dist.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

Eastern Dist.
January, 1840.

CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

sumed, then, that it is to be taken, subject to all the general principles and rules which govern in other cases of prescription.

The first principle to be applied to this case, then, is that the prescription in such a case cannot run against third persons, as to acts which they have an interest to annul, and to which they were not parties, but from the time at which they became known to them. *Vazeille Traité de Prescrip.*, p. 227, *No.* 334.

Now, when did the existence of this pledge become known to the plaintiff? It is clear from the record that the first intimation was when the defendant produced it in his defence to the action brought by the plaintiff to annul the sale or transfer; and there is no circumstance to contradict or cast even a suspicion upon this position. The pledge had been passed before the cashier of the bank, which is, to all intents and purposes, the bank itself. A party to the fraud complained of, remained up to the time it was cancelled or annulled in the sole and exclusive custody and possession of the knowledge of its existence; confined to the parties to the act who were both participators in the contemplated fraud. And the inference of a total want of knowledge, as it regards all but the parties, is strengthened and confirmed by every circumstance in the case. The case is, then, a fair one for the application of this principle. The article 1989, of the Code, does not conflict with this position; as appears clearly from the case of Petit *vs.* His Creditors, 3 *Louisiana Reports*, 26, where this court decided that to give effect to both articles of the Code, the article 1989 must be taken as relating to another description of cases, viz: those where there was some other mark of fraud besides a mere preference.

II. The next principle applicable to this case is, that an undivided thing cannot be possessed by two distinct titles, different in their nature and claim, by prescription under both. *Vazeille Traité de Prescrip.*, p. 47, *No.* 121.

The possession by pledge was under a precarious title. That by the sale or transfer was translative of the property, and totally different in their nature. The possession under

EASTERN DIST.
*January*, 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

the two titles cannot then be united so as to acquire the complete indemnity to the fraud with which they were both tainted by the prescription under the article 1982, of the Code.

Although the law gives an indemnity by lapse of time for acts of this nature, yet it is certain that the whole term must expire before the indemnity is acquired; and on the other hand, it is equally certain that the parties injured by those acts have to the expiration of the last hour of the time, to annul them. It appears that the pledge came into existence on the 31st January, 1837. It is equally clear that it was annihilated on the 22d of August, 1837; the testimony is conclusive as to this, that it was cancelled and destroyed, and the whole matter settled by the transfer, with the consent of all the parties to it.

When this took place, there was five months of the time yet to run; the thing to be annulled at the suit of the creditor aggrieved, had no longer any existence; it was gone or merged in another contract, differing from it in its very nature and essential qualities and effects; all its effects upon the immediate parties to it were lost and destroyed, and by consequence its effects upon third persons; and the possession under the new title took its date from that time; and putting aside the want of all knowledge on the part of the plaintiff of the existence of the first contract, any action to annul that which the parties themselves had annulled, was useless, and would have resulted in nothing. Yet at the time this contract was extinguished, the party aggrieved by it had five months of the time allowed by law to attack it; how has he lost this time? It is presumed that he could only lose it by the continual operation of this act upon the thing or subject matter to which a destination was intended to be given. This is the foundation of all prescription, and this is the fair interpretation of the article of the Code creating it; it did not so continue to operate upon the thing, or govern its destination. The thing itself was translated by the second act; received a different destination; was held and possessed by another title; and during the remainder of

EASTERN DIST.
January, 1840.
CALDWELL ET AL.
vs.
ATCHAFALAYA
BANK.

the time allowed to the creditor to attack the transaction, the only visible contract; the only one in existence; the only one to be annulled, was the contract of sale. He does this within the time prescribed by law, and upon his proving clearly the fraud, and its consequent nullity. It is pretended that the first act, founded on the same consideration, tainted with the same fraud, is *revived*, and is now in full force by lapse of time, inattackable for the fraud by prescription.

Upon what principle is it to be sanctioned, that a party shall, by his own act, by fraud and collusion with another, extinguish an act in itself fraudulent, supply its place by another equally fraudulent, and when he fails to sustain his fraud and collusion on the last, revive the first, and protect it by lapse of time, when the party defrauded, had, at the extinguishment of the first act, nearly one-half of the time allowed by law to attack it? This would be allowing to the party guilty of fraud the full benefit of the term running in favor of a thing which was a dead letter, with no life or existence, and denying to the party defrauded the full benefit of a large portion of the period of the time allowed him by law to redress his grievance. We think the only just conclusion that the circumstances of this case will warrant, is that, if the pledge is revived at all, it is revived, subject to all the objections that might have been made to it at the time it became extinct.

This conclusion is in accordance with principles laid down by this court in the case of *Morgan* vs. *Robinson,* 12 *Martin,* 76, and in 11 *Louisiana Reports,* 532. 1 *Martin, N. S.,* 458; 4 *Idem,* 500; 7 *Idem,* 481.

The article 3126, of the Louisiana Code, declares that " the acts of pledge in favor of the banks of this state *shall be considered* as forming authentic proof, if," &c., &c. The general provision of this article of the Code does not constitute the cashiers of the banks officers, with authority to pass acts of pledge in all cases. Nor does it make all acts of pledge that may be passed by them *public* and authentic acts. The sense of this article must be governed and controlled by the charter of the bank itself, and only such acts

EASTERN DIST.
*January,* 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

can be embraced by it as, by the charter, the bank was empowered to exact, and under the circumstances contemplated by the charter.

The 19th section of the charter of the Atchafalaya Bank is the only one which speaks of the pledge, and that only incidentally, and it embraces only the case of loans made on a pledge of the stock of the bank.

In the present case, it does not appear that there was any loan made by the bank on the pledge of this stock, but that the debt had been previously contracted to the bank, and the pledge made to secure it. Now, if the power of cashiers to pass acts is not to be confined to cases clearly contemplated by the charter, then the material interests of individuals may be compromited by acts passed before one of the contracting parties, of which he alone has the custody, not spread upon any public record, nor any obligation imposed to make them public, or even to exhibit them, or acknowledge their existence on inquiry, and all means of notice denied, contrary to the spirit of our whole legislation on the subject, which requires the recording in a public office, and at a time not suspicious. This defect, if it be one, is not cured by prescription, but goes to the act itself.

*Bullard, J.*, delivered the opinion of the court.

This is a revocatory action, by which the plaintiff, one of the creditors of Chapman, an insolvent debtor, seeks to annul a transfer of stock made to the defendants, in fraud of his rights. The only ground of fraud alleged is, that the insolvent thereby gave an unjust preference to the bank, also his creditor, and having a full knowledge of his insolvency. After the surrender of Chapman, the syndic of his creditors intervened, and joining the plaintiff in his demand of nullity, claims that the stock should be restored to the mass of the insolvent's property.

This *datien en paiement* to the bank was made, we do not doubt, under circumstances which would render it null, as to other creditors, on the ground of an unjust preference, had it not been for a previous contract of pledge between the

EASTERN DIST.
*January,* 1840.

CALDWELL ET AL.
*vs.*
ATCHAFALAYA
BANK.

Where bank
stock is pledged
to secure a debt
to the bank, and
is    afterwards
transferred,  in
payment, at its
full value; al-
though made on
the eve of insol-
vency, it does
not    prejudice
other  creditors,
and is not frau-
dulent as to their
rights.

parties, by which the stock in question was specially affected to secure the payment of a large debt due to the bank. If that contract was valid, then the preference complained of already existed, and the only remaining inquiry would be, whether the subsequent sale of the stock was for an inadequate price, and to the injury of the complaining creditors? The contract of pledge took place more than one year previously to the institution of this suit; and there is a plea of prescription.

We are quite satisfied that the sale of the stock to the bank was but a consummation of the contract of pledge; and that, if the sale itself were declared void, the pledge, together with the preference which it confers, would revive; because the parties are to be placed in the same condition they were in before the transaction complained of; and we concur with the counsel for the appellant in the proposition, that, if the pledge was valid at the time of the transfer, and the stock was transferred at its full value, then the contract did not prejudice other creditors, and consequently cannot be set aside.

This brings us to the inquiry whether it be now too late to question the validity of the contract of pledge, which had existed more than a year before the institution of this suit?

Article 1982 declares that no contract between a debtor and one of his creditors, for the purpose of securing a just debt, shall be set aside by this action, although the debtor was insolvent to the knowledge of the creditor, and although the other creditors be injured by such contract, if such contract was made more than one year before the suit brought to avoid it, and if it contain no other cause of nullity than the preference given to one creditor over another.

The revoca-
tory action, to
set aside a con-
tract by an in-
solvent debtor to
a creditor, to se-
cure a just debt,
is only applica-
ble to a particu-
lar class of cases,
in which the
only ground of
nullity, is an *un-
due preference*
given to one of
the creditors,
and suit must be
brought within a
year from the
date of such
contract.

To this it has been answered, that, by a subsequent article, to wit, 1989, the action, it is true, is limited to one year; but if brought by a single creditor, to run from the date of judgment, against the debtor; and if, by a syndic, or other representative of the creditors collectively, from the day of their appointment. It has been argued that this latter article is inconsistent with the one first cited, and must control it.

The court is bound, if .possible, to give some effect to both articles; and they are easily reconciled by considering article 1982, as applicable to a particular class of cases, in which the only alleged ground of nullity is an undue preference given to one of the creditors of an insolvent; and the other article, as applicable to all other contracts, by which creditors are injured. Such is the view which this court took of these provisions of the Code in the case of Petit *vs.* His Creditors, 3 *Louisiana Reports*, 26.

With this view of the case, and under the agreement made by counsel in this court, we do not think it important to examine several questions which arose on the trial below, but considering that the stock is shown to have been sold for *its full value at the time, and. to satisfy a .debt privileged to be paid out of it by a contract no longer liable to be attacked by other creditors of the insolvent, either individually or collectively;* and, consequently, that the complaining creditors have not been injured by the sale of the stock to the bank, we think ourselves authorized to declare that the plaintiffs are not entitled to the remedy they seek.

The judgment of the District Court is, therefore, reversed; the verdict set aside, and judgment is here given for the defendants, with costs in both courts.